09:37:18  1               IN THE UNITED STATES DISTRICT COURT

       2                 FOR THE DISTRICT OF DELAWARE

       3

       4    ORACLE CORPORATION,          )
                                         )
       5                 Plaintiff,      )
                                         ) C.A. No. 23-126(MN)
       6    v.                           )
                                         )
       7    VILOX TECHNOLOGIES, LLC,     )
                                         )
       8                 Defendant.      )

       9

      10

                            Thursday, July 27, 2023
      11                    10:00 a.m.
                            Hearing
      12

      13                     844 King Street
                            Wilmington, Delaware
      14

      15

      16    BEFORE:   THE HONORABLE MARYELLEN NOREIKA
                      United States District Court Judge
      17

      18

      19    APPEARANCES:

      20
                            MORRIS NICHOLS ARSHT & TUNNELL LLP
      21                    BY:  JACK B. BLUMENFELD, ESQ.
                            BY:  BRIAN P. EGAN, ESQ.
      22
                            -and-
      23
                            ORRICK HERRINGTON & SUTCLIFFE, LLP
      24                    BY:  JARED BOBROW, ESQ.

      25                          Counsel for the Plaintiff

1  APPEARANCES (Cont'd):

2

3          RAMEY LLP
           BY:  WILLIAM P. RAMEY, III, ESQ.

4

5                    Counsel for the Defendant

6

7              – – – – – – – – – – – –

09:55:50 8

09:55:50 9          THE COURT:  All right.  Good morning,

10:04:12 10  everybody.  Please be seated.  Let's start with some

10:04:15 11  introductions.

10:04:18 12          Mr. Ramey, introductions.

10:04:21 13          MR. RAMEY:  Pardon me, Your Honor, I didn't hear

10:04:24 14  you.  Bill Ramey for the plaintiff, Vilox, LLC, and Vilox

10:04:30 15  Technologies.

10:04:30 16          DR. DeBELLIS:  And Joseph DeBellis here for

10:04:33 17  myself.

10:04:34 18          THE COURT:  All right.

10:04:35 19          MR. BLUMENFELD:  Good morning, Your Honor.  Jack

10:04:37 20  Blumenfeld from Morris Nichols for Oracle, along with Jared

10:04:42 21  Bobrow who is now with the Orrick firm, and Brian Egan from

10:04:45 22  Morris Nichols.

10:04:46 23          THE COURT:  Good morning to everyone.  So we

10:04:48 24  have a couple of motions pending in this case so I thought

10:04:52 25  we should come in and figure out where we are.

10:04:55 1          Who wants to start?

10:04:58 2          MR. RAMEY:  If I may, this is Bill Ramey for the

10:05:01 3     plaintiffs.  Your Honor, Dr. DeBellis and I have spoken

10:05:08 4     before the hearing today and in trying to find a way to make

10:05:12 5     this easier for the Court and for the parties.  It's my

10:05:15 6     understanding that there is no opposition for my firm

10:05:19 7     withdrawing from the patent infringement case except to the

10:05:22 8     extent that it would have meant dismissal of those causes of

10:05:26 9     action for right now, that's what I have confirmed with

10:05:30 10    Dr. DeBellis.

10:05:30 11         Now that he has re-assigned the patents to

10:05:34 12    himself personally, I don't believe Vilox LLC or Vilox

10:05:38 13    Technologies has standing in the patent infringement case.

10:05:40 14         THE COURT:  Well, there is a dispute about that,

10:05:42 15    because I asked if they would let them out and they said

10:05:45 16    that -- for the patent they would need to stay in, I think,

10:05:49 17    so what do we need to do about that?

10:05:52 18         MR. RAMEY:  Yes, Your Honor, for all intents and

10:05:54 19    purposes for the case going forward, those two entities

10:05:57 20    don't have standing to maintain a patent infringement

10:06:00 21    lawsuit, so unless there is a counterclaim directed against

10:06:01 22    them, they're not part of the lawsuit.

10:06:03 23         THE COURT:  All right.

10:06:05 24         MR. RAMEY:  I'm sorry, and Dr. DeBellis asked to

10:06:05 25    speak for himself so I'm not going to put words in his mouth

10:06:12  1  what he said, but he did say that he would be fine with you

10:06:15  2  say getting out if the case were not dismissed.  I'll leave

10:06:18  3  it with that and let Dr. DeBellis pick it up if that's okay

10:06:21  4  with the Court.

10:06:22  5          THE COURT:  All right.  Mr. Bobrow.

10:06:25  6          MR. BOBROW:  Yes.  Thank you, Your Honor.  We do

10:06:31  7  oppose the substitution request that was made which would

10:06:35  8  then essentially remove Vilox from the case.  We oppose that

10:06:39  9  request and think that under Rule 25 the Court should join

10:06:45  10  Dr. DeBellis, but not substitute him in place and instead of

10:06:48  11  Vilox.

10:06:49  12          There are really two principle reasons for that.

10:06:52  13  First of all, the only information that we have about this

10:06:56  14  purported assignment is the document itself.  There has been

10:06:59  15  no discovery about it.  There has been no declarations

10:07:02  16  around it.  And as the Court is aware, there are frequently

10:07:07  17  agreements, side letters and the like that relate to an

10:07:10  18  assignment that aren't reflected necessarily in the

10:07:13  19  assignment.  So we would like the opportunity to take that

10:07:16  20  discovery both from Dr. DeBellis and from Vilox to assess

10:07:20  21  what rights remain with Vilox, what rights may have been

10:07:24  22  transferred.  So that's the first point.

10:07:26  23          The second point is --

10:07:27  24          THE COURT:  You have no documents about this

10:07:29  25  other than the assignment itself?

10:07:31 1                    MR. BOBROW:  Correct.

10:07:33 2              The second point, and Mr. Ramey just alluded to

10:07:38 3    is there is a claim against Vilox directly and that's our

10:07:42 4    breach of contract claim.  And that claim was asserted in

10:07:44 5    the '126 case based upon the filing of the case originally

10:07:49 6    in Texas and the reliance in the complaint on various

10:07:55 7    information and allegations about a prior lawsuit which the

10:07:59 8    parties agreed would not be included.

10:08:00 9              And so by taking those actions, we have a breach

10:08:05 10   claim against them and for that additional reason, we think

10:08:08 11   that Vilox should stay in the case.

10:08:12 12                   THE COURT:  Okay.

10:08:14 13                   MR. BOBROW:  And if I may, there is one minor

10:08:16 14   procedural point.  We have no objection and indeed we moved

10:08:21 15   for Vilox LLC, not Vilox Technologies, but Vilox LLC to be

10:08:28 16   dismissed for lack of standing because there is no record of

10:08:31 17   it ever having an interest in the patent.  And in the papers

10:08:35 18   and opposition to our motion to dismiss, Vilox took the

10:08:40 19   position that it has no objection to that dismissal.

10:08:42 20                   THE COURT:  So that one I think is okay.  You

10:08:42 21   have no objection to Vilox LLC being dismissed, right?

10:08:42 22                   MR. RAMEY:  No, Your Honor.

10:08:42 23                   THE COURT:  So we will dismiss Vilox LLC from

10:08:52 24   this case.  Mr. Ramey, what about -- did you say Ramey or

10:08:52 25   Ramey?

10:08:58 1     MR. RAMEY:  Your Honor, Ramey.

10:08:59 2     THE COURT:  Ramey.  Mr. Ramey the two points

10:09:02 3 that were just made which are they oppose dismissal of Vilox

10:09:12 4 Technologies LLC because there is one, they want a little

10:09:17 5 bit more transparency on the assignment just to ensure that

10:09:24 6 Dr. DeBellis has all the rights.  But also there is a breach

10:09:27 7 of contract claim.

10:09:29 8     MR. RAMEY:  Yes, Your Honor.  And I think

10:09:31 9 Dr. DeBellis came here for the Court's order and he wanted

10:09:34 10 to talk about the assignment to clear that up for the Court.

10:09:37 11 I wasn't involved, my firm wasn't involved in the creation

10:09:41 12 of the assignment or in any part of it, but it's our

10:09:45 13 understanding from our discussions with Dr. DeBellis and

10:09:47 14 another lawyer is that the fact the entire right has been

10:09:50 15 assigned to Dr. DeBellis and no other rights --

10:09:52 16     THE COURT:  Right.  But that's something that

10:09:54 17 needs to be probed in discovery.  I'm not going to do that

10:09:57 18 discovery.  If they want to get a little discovery on that,

10:10:00 19 it may very well be that that's the case, but I'm not going

10:10:02 20 to sit here and do discovery when that hasn't been discussed

10:10:02 21 or talk about things that weren't in front of the

10:10:02 22 defendants.

10:10:10 23     MR. RAMEY:  Yes, Your Honor.  And the second

10:10:11 24 issue being per the Court's orders we have sought out local

10:10:15 25 counsel, we have talked to each of the four local counsel in

10:10:18  1   the State of Delaware that typically do contingent or

10:10:23  2   plaintiff's representation and each one of them -- Tim

10:10:27  3   Devlin at the Devlin Law Firm, I talked to him back in

10:10:30  4   September of '22 on a straight matter and in January a

10:10:33  5   lawyer from my firm talked to him more recently and he's not

10:10:37  6   doing the representation for these cases at least.

10:10:40  7   Mr. Stamoulis of Stamoulis & Weinblatt, I worked with him on

10:10:46  8   other cases, many of them, and he has been very helpful in

10:10:50  9   navigating the issues we have, but he's not willing to serve

10:10:53 10   as local counsel, Your Honor.

10:10:54 11            And then, of course, Mr. Chung, Jimmy Chung, I

10:10:57 12   worked with him on probably fifty cases in these courts, and

10:11:01 13   he again doesn't have the bandwidth to pick up anymore

10:11:05 14   contingent representation.

10:11:07 15            And then lastly Mr. George Pazuniak, he and I

10:11:13 16   have talked on the phone and we have offered to pay him an

10:11:16 17   hourly fee for representation on the case, Your Honor, and

10:11:19 18   he was not willing to do it.  They don't want to get

10:11:22 19   involved as local counsel on these cases.  So we're not

10:11:27 20   intending to disregard the Court's order in any way, we have

10:11:31 21   reached out, I even reached out to an attorney in Dover that

10:11:34 22   a relative of mine knows that doesn't do patent work and, of

10:11:38 23   course, they didn't want to do it because it's patent work

10:11:42 24   and I agree with that.

10:11:42 25            THE COURT:  Sir, we're a small state, but we

10:11:45 1   have more than four or five lawyers in it.  So, I mean, it

10:11:49 2   seems like -- I mean, i appreciate that you reached out to

10:11:53 3   four, but we do have this requirement of local counsel and

10:11:58 4   telling me that you tried four folks, there are a lot more

10:12:02 5   attorneys, there are, you know, individuals who are sole

10:12:07 6   practitioners and they may be willing to do it, so I don't

10:12:12 7   know that I can say that -- I mean, I don't know what I can

10:12:16 8   tell you, but reaching out to four people doesn't really

10:12:20 9   seem like you have exhausted the possibilities here.  And

10:12:23 10  it's been a really long time since you were ordered, since

10:12:27 11  the client, your client was ordered to do so.

10:12:30 12       MR. RAMEY:  Your Honor, maybe I should have

10:12:31 13  added, when I talked to each one of those four lawyers and

10:12:34 14  law firms that I mentioned, I asked each of them were they

10:12:38 15  aware of any other counsel that would pick up contingent

10:12:41 16  representation in a patent matter and each one of them told

10:12:45 17  me no, not in the State of Delaware, not at this time.

10:12:47 18  Every one of these repeated those exact words with me.  We

10:12:52 19  will 100 percent continue our effort to --

10:12:55 20       THE COURT:  Let's assume that I say that this

10:12:57 21  company cannot be let out at this time, there is a breach of

10:13:00 22  contract claim against them, I can't just dismiss that,

10:13:04 23  right?  Breach of contract claim.

10:13:08 24       MR. RAMEY:  Your Honor, there is a breach of

10:13:10 25  contract claim.  We think that that claim probably could be

10:13:13  1   summarily disposed of, but you're right, I think that is an

10:13:17  2   issue that the company will remain in the case for the

10:13:19  3   breach of contract.

10:13:20  4             THE COURT:  Okay.  So the company is going to

10:13:22  5   remain in the case.  And the substitution request, you all

10:13:30  6   don't mind joining Dr. DeBellis, but you don't want to

10:13:34  7   substitute, right?  It's okay to join him?

10:13:38  8             MR. BOBROW:  For Oracle, yes, we have no

10:13:41  9   objection to him joining.

10:13:42 10             THE COURT:  Just for Oracle, I'm a little fuzzy,

10:13:47 11   that's the only party that matters, correct?

10:13:49 12             MR. BOBROW:  Correct.

10:13:49 13             THE COURT:  All right.  Okay.  So we will join

10:13:56 14   him.  I am not going to substitute him at this point because

10:14:00 15   I think it is clear that Vilox Technologies has to remain in

10:14:07 16   at least the 126 case because there is a breach of contract

10:14:14 17   claim.  So I don't know what we do now given where we are.

10:14:21 18   What do we do with the cases if you need local counsel?

10:14:32 19   It's been months.  I don't know what to do.  So what are you

10:14:37 20   proposing?

10:14:40 21             MR. RAMEY:  Your Honor, we will continue our

10:14:42 22   search for local counsel.  Now that it is purely a breach of

10:14:46 23   contract action, maybe there will be someone I can find to

10:14:50 24   help.

10:14:50 25             THE COURT:  I'm sorry, I'm not saying a purely

10:14:53  1    breach of contract action.  I never said this is purely a

10:14:57  2    breach of contract action.  You all said substitute one for

10:15:01  3    the other.  I said I can't, we can add him, but we can't

10:15:06  4    substitute because there is no breach of contract action

10:15:09  5    pleaded against him.  So it may be that I also can't

10:15:12  6    substitute because the assignment is not sufficient, but I

10:15:15  7    don't know that because you guys need to do some discovery.

10:15:18  8    But at the very least, they are in it for a breach of

10:15:24  9    contract.

10:15:25 10            MR. RAMEY:  Yes, Your Honor.  Maybe I should

10:15:26 11    have said now that Dr. DeBellis is no -- who will be -- is a

10:15:31 12    patent assignor, or assignee of the patents, the one with

10:15:35 13    the proper standing in the patent infringement cases, that

10:15:38 14    he'll be the one taking charge of that part of the case.  I

10:15:42 15    think I will be able the talk to further attorneys and say

10:15:45 16    the majority of the case is on this breach of contract.

10:15:48 17    Maybe I misspoke before by not including those other words,

10:15:52 18    but I can go back and I do have some other attorneys to

10:15:55 19    speak with, Your Honor.  As I said, we talked to at least

10:15:58 20    one of those other attorneys about a payment to help with

10:16:00 21    just the local counsel work, we have agreed to do all the

10:16:03 22    legal work, but I'll continue those efforts, Your Honor.

10:16:06 23    And we have tried, it's just we haven't found anyone who we

10:16:11 24    could recommend to the client to competently stand into a

10:16:14 25    patent infringement case, that's ultimately what I'm trying

10:16:16 1    to say.

10:16:17 2              THE COURT:  You just said we've agreed to do all

10:16:19 3    the legal work.  You mean you're staying in this case?

10:16:23 4              MR. RAMEY:  No, Your Honor, what we have said

10:16:25 5    for local counsel is that we weren't going to ask them to do

10:16:30 6    the legal work, we were going to ask them to essentially be

10:16:33 7    the true local counsel and we would be the one supplying all

10:16:36 8    the legal work for their approval.

10:16:38 9              THE COURT:  You're saying we but yet you have a

10:16:41 10   motion to withdraw from the case.

10:16:43 11             MR. RAMEY:  And that hasn't been granted by the

10:16:46 12   Court.  That's when we were coming in to get local counsel.

10:16:50 13   There are a lot of different things going on, I will agree

10:16:53 14   with the Court, but what we were trying to say is we weren't

10:16:55 15   trying to hire counsel to appear on a contingent matter and

10:17:00 16   be saddled with all this extra legal work, that's what we

10:17:05 17   were trying to assure the people we talked about local

10:17:09 18   counsel representation.

10:17:10 19             Your Honor, Dr. DeBellis, I don't have a

10:17:11 20   representation agreement, the firm doesn't with

10:17:12 21   Dr. DeBellis, but he has asked me if the Court would allow

10:17:17 22   it that he be allowed some time to address these issues.

10:17:19 23             THE COURT:  Yes, he can.  But I'm so confused

10:17:22 24   about these representations you're making that we would do

10:17:22 25   the legal work because it sounds -- I have a motion to

10:17:33 1    withdraw, so if you get local counsel, are you withdrawing

10:17:36 2    from this case?

10:17:37 3                  MR. RAMEY:  Yes, Your Honor.

10:17:37 4                  THE COURT:  So then what are you representing to

10:17:40 5    them you're going to be doing the legal work?  Once you get

10:17:44 6    them involved in the case, you're then going to ask to be

10:17:46 7    removed?

10:17:47 8                  MR. RAMEY:  I think that's part of the issue

10:17:49 9    with finding local counsel as well.

10:17:51 10                  THE COURT:  Why are you telling them that you're

10:17:53 11   going to do the legal work that you know as soon as they get

10:17:56 12   their names on the paper you're out?

10:17:57 13                  MR. RAMEY:  Because there was no guarantee the

10:18:00 14   Court was going to grant our motion to withdraw.  We were

10:18:03 15   not going to saddle local counsel with the appearance of

10:18:06 16   taking on the entire case.

10:18:08 17                  THE COURT:  You wanted to make sure they did

10:18:09 18   take on the entire case once they got into it?

10:18:12 19                  MR. RAMEY:  No, I would like to work with these

10:18:14 20   four lawyers again in the future on other cases and I don't

10:18:16 21   want to create bad blood with any of them.

10:18:19 22                  THE COURT:  For now I am going to deny the

10:18:21 23   motion to withdraw because there is an corporate entity that

10:18:27 24   is still in the case that requires representation.  You may

10:18:35 25   refile it at some point if there is additional counsel that

10:18:38  1      is brought into this case.   But I am going to deny it for

10:18:43  2      now.

10:18:46  3                  So can someone just refresh me on what motions

10:18:52  4      we had.   We had the motion to withdraw.   We had a motion to

10:18:55  5      dismiss, which I granted part of.   We had the -- I don't

10:19:01  6      remember if it was a motion to substitute or request to

10:19:04  7      substitute which I think I dealt with.   What else do we

10:19:07  8      have, Mr. Bobrow?

10:19:08  9                  MR. BOBROW:   There is also, Your Honor, a motion

10:19:09 10      to dismiss under 12(b)(6).

10:19:12 11                  THE COURT:   Yes, I knew that.   I said I granted

10:19:14 12      part of that.   That one I was aware of.   Is there anything

10:19:17 13      else that I'm not ruling on at the moment?

10:19:20 14                  MR. RAMEY:   Withdraw, intervene, dismiss, there

10:19:23 15      is three.

10:19:24 16                  THE COURT:   The intervene, I guess -- intervene

10:19:27 17      is the one where we're talking about substitution versus the

10:19:32 18      joinder.

10:19:32 19                  MR. BOBROW:   That's correct, Your Honor.

10:19:33 20                  THE COURT:   That one I'm kind of granting in

10:19:33 21      part, I think.   The record can reflect where he will join as

10:19:33 22      a party but not be substituted.   The motion to withdraw is

10:19:42 23      denied without prejudice to renew at a later time when the

10:19:42 24      party will not be left unrepresented.   And then we have the

10:19:52 25      12(b)(6).   Okay.

10:19:56 1               Any questions, Mr. Ramey, before I hear from

10:20:00 2  Mr. Bobrow on the 12(b)(6)?

10:20:02 3               MR. RAMEY:  Yes, Your Honor, we have Vilox LLC

10:20:05 4  out of the patent infringement case.  I would like -- if

10:20:08 5  there would be -- we'll just have to file another motion, we

10:20:11 6  would like to get them out of the patent infringement side

10:20:14 7  of the case as well as they're not a proper plaintiff

10:20:18 8  anymore, but we'll have to file a new motion based on the

10:20:21 9  Court's rulings.

10:20:26 10               THE COURT:  Hold on.  These two cases, it's just

10:20:29 11  not natural to my -- which one is the patent infringement

10:20:32 12  case that you're talking about?  That's the 302 case?

10:20:36 13               MR. RAMEY:  Yes, Your Honor.

10:20:37 14               THE COURT:  So you all brought them into the

10:20:41 15  case, Vilox LLC, and I don't see them on the complaint in

10:20:48 16  the 126 case.  Are they in the 126 case?

10:20:52 17               MR. RAMEY:  No, Your Honor.

10:20:53 18               MR. BOBROW:  No, Your Honor, they're not.

10:20:54 19               THE COURT:  So when I dismissed them, wasn't I

10:20:57 20  dismissing them from the patent case?

10:21:00 21               MR. BOBROW:  So yes, this is all procedure -- a

10:21:04 22  bit complex, but originally what happened is in Texas, Vilox

10:21:09 23  Technologies and Vilox LLC sued Oracle.  We then moved to

10:21:14 24  transfer here per an agreement.  Vilox LLC does not have

10:21:17 25  standing.  It never did.  So we moved to dismiss them.

10:21:21 1          THE COURT:  In?

10:21:21 2          MR. BOBROW:  In the 302 case.

10:21:23 3          THE COURT:  In the 302 case.

10:21:25 4          MR. BOBROW:  But when we brought our declaratory

10:21:28 5   judgment and breach of contract claim, we did not file

10:21:32 6   against Vilox LLC, only against Vilox Technologies.  Now as

10:21:37 7   a few days ago, and per your joinder, Dr. DeBellis is now

10:21:41 8   part of that.

10:21:41 9          THE COURT:  Okay.  The motion to dismiss that

10:21:45 10  includes the motion to dismiss based on 12(b)(6) as well as

10:21:49 11  the motion to dismiss Vilox LLC, that's filed in the 302

10:21:54 12  case?

10:21:54 13         MR. BOBROW:  That's correct, Your Honor.

10:21:55 14         THE COURT:  So when I granted that motion and

10:21:58 15  said Vilox LLC is dismissed, it was in the 302 case?

10:22:02 16         MR. BOBROW:  Correct, Your Honor.

10:22:03 17         MR. RAMEY:  Correct.

10:22:04 18         THE COURT:  And the 302 case is the patent

10:22:06 19  infringement case that Mr. Ramey was just referring to?

10:22:08 20         MR. BOBROW:  That's correct, Your Honor.

10:22:09 21         THE COURT:  They are dismissed from the patent

10:22:11 22  infringement case.  So I don't know what further filings

10:22:14 23  you're suggesting you would be making.

10:22:16 24         MR. RAMEY:  Yes, Your Honor.  All I'm trying to

10:22:18 25  do is clean up the case.  Dr. DeBellis is substituted in as

he's now the rightful owner, not Vilox Technologies, of the

patents, I'm just trying to extract Vilox Technologies from

the 302 case.  I understand they can't be --

THE COURT:  I see what you're saying, Vilox

Technologies.  So that one I think you need to have some

discovery.

MR. RAMEY:  Yes, Your Honor.

THE COURT:  Give Oracle some discovery and then

you guys can talk about whether the rights that Dr. DeBellis

has are sufficient that Vilox Technologies is not a proper

party any longer to the patent infringement case.

MR. RAMEY:  Thank you, Your Honor.  And may I

ask Dr. DeBellis if he can address the Court?

THE COURT:  Of course.

MR. RAMEY:  Thank you, Your Honor.

DR. DeBELLIS:  Madam.

THE COURT:  Good morning.

DR. DeBELLIS:  No, I just would like to say that

there is a lot of confusion.  First of all, I apologize to

everyone here, not being an attorney, I realize how painful

that must be to everyone.  I'm a physician by training and

when people get their medical degree from Google, it's

exquisitely uncomfortable, so I'm doing my best here to

represent myself here by default because of a series of

unfortunate circumstances, it's very confusing, and it's my

10:23:54 1   intention to defend my patents as best as possible or

10:23:57 2   prosecute a claim that I believe is valid.  That's all I can

10:24:01 3   say right now.

10:24:01 4          THE COURT:  All right.  You said earlier that --

10:24:06 5   or you said I think in one of the letters, maybe the one

10:24:09 6   seeking to delay this hearing that you had offered to try to

10:24:14 7   settle these cases.  Is that right?

10:24:16 8          DR. DeBELLIS:  Yes.  And again, my apologies,

10:24:19 9   both to Mr. Bobrow and Mr. Egan because I am unaware that

10:24:24 10  there is a very specific nature to the word "demand" in the

10:24:31 11  law.  I simply -- when Mr. Bobrow and I had a conversation,

10:24:35 12  he said to me what's your demand, and my simple demand in my

10:24:39 13  mind in sort of layman's parlance was to have a conversation

10:24:43 14  with Oracle, a respectful conversation about liability.  And

10:24:46 15  Mr. Egan in his opinion said that was false because I didn't

10:24:50 16  give a monetary sum which was not my intention.  So I'm

10:24:54 17  simply saying that I have been and always will be open to

10:24:58 18  some kind of settlement discussion and that was my effort.

10:25:02 19         THE COURT:  Okay.  Thank you for clarifying

10:25:04 20  that.  Thank you.  If there is anything else you want to

10:25:06 21  tell me as you hear things, let me know.

10:25:09 22         DR. DeBELLIS:  Thank you.

10:25:10 23         THE COURT:  All right.  So that just leaves us

10:25:12 24  with the 12(b)(6), right?

10:25:18 25         MR. BOBROW:  That's right, Your Honor.

10:25:19  1        THE COURT:  All right.  And I'm sure you know

10:25:22  2   Mr. Bobrow, or Mr. Blumenfeld or Mr. Egan, or your own

10:25:29  3   experience that I don't view the pleading standards in

10:25:33  4   patent cases as being extremely exacting, particularly for

10:25:39  5   direct infringement.  So keep that in mind when you're

10:25:42  6   trying to persuade me.

10:25:43  7        MR. BOBROW:  Yes.  Thank you, Your Honor.  And I

10:25:45  8   appreciate that guidance.  And I think that guidance here is

10:25:49  9   very apt because what we have are method claims and

10:25:56 10   assertions that specific Oracle products practice those

10:25:59 11   method claims.

10:26:00 12        THE COURT:  I just want to pull up the patent

10:26:02 13   here so I have it in front of me when I'm thinking method

10:26:05 14   claim and listening to you.  Just give me -- this is the

10:26:14 15   '720 patent?

10:26:15 16        MR. BOBROW:  Yes, Your Honor.  There are two

10:26:16 17   patents, one is the '720 patent and the last one is the '100

10:26:21 18   patent.

10:26:21 19        THE COURT:  Okay.

10:26:22 20        MR. BOBROW:  And the claim charts attached to

10:26:24 21   the complaint both simply refer to one claim, in each case

10:26:28 22   it's claim 1.  And both of those are method claims.

10:26:31 23        THE COURT:  Okay.

10:26:31 24        MR. BOBROW:  And in the '720 patent, it's a

10:26:35 25   method for searching databases, and in the '100 patent it is

10:26:42 1    a method for creating a data report.  So these are method

10:26:47 2    claims.  And the complaint targets two Oracle products, one

10:26:52 3    is called Oracle Database, and the other one is called ATG.

10:26:58 4          And the fundamental problem with the pleadings

10:27:04 5    here is that the pleading and the attachments and the claim

10:27:09 6    charts and all of that never plead that Oracle and those

10:27:14 7    products practice the method.  What they have done instead

10:27:18 8    is they have stitched together either multiple Oracle

10:27:22 9    products that aren't Oracle database or ATG, number one, and

10:27:27 10   number two, they rely upon essentially a software program

10:27:33 11   called SQL, SQL is S-Q-L, structure query language, that's

10:27:41 12   not an Oracle product or an Oracle offering, it is a program

10:27:45 13   that was developed in the 1970's for querying data

10:27:51 14   repositories, databases.

10:27:52 15         So the information in the pleading simply

10:27:55 16   stitches these multiple components together, some third

10:27:59 17   party, some other products, and there is no explanation as

10:28:03 18   to how all this fits together and how Oracle practices these

10:28:07 19   methods.

10:28:07 20         So that's the fundamental problem here is simply

10:28:11 21   an absence of any explaining or any pleading that those

10:28:17 22   Oracle products perform the methods.

10:28:19 23         THE COURT:  I'm just pulling -- so I'm looking

10:28:32 24   at Exhibit B to the 302 complaint.

10:28:36 25         MR. BOBROW:  Yes.

10:28:36 1          THE COURT:  And we have a method implemented on

10:28:41 2   a computer and then we have Oracle database, determining a

10:28:53 3   database scheme, or a database and then they cite to things

10:29:03 4   about Oracle database.

10:29:05 5          MR. BOBROW:  As we set forth in the papers, Your

10:29:07 6   Honor, I think the principle feature here of this claim is

10:29:11 7   in the very last -- well, the second to last element, it

10:29:15 8   begins with the word "if."  And essentially what this claim

10:29:20 9   is about is there is some sort of a search through a

10:29:23 10  database and some information comes back and then you

10:29:26 11  truncate that information by reducing the number of

10:29:31 12  characters that are called back from the search.  That's

10:29:33 13  what this is, just in a nutshell what this is about.

10:29:37 14          And the element that starts if the quantity

10:29:41 15  exceeds a specified amount, then it says you truncate the

10:29:44 16  data, and then it says wherein the truncating reduces the

10:29:48 17  characters in one or more entries.

10:29:50 18          If you look at what is cited here, all of this,

10:29:53 19  all of the citations to this external information, this is

10:29:58 20  all about SQL, all of it.  None of it is about Oracle

10:30:02 21  Database which is the product that is accused of practicing

10:30:02 22  the method.

10:30:02 23          So, for example, if you look at page 12 --

10:30:10 24          THE COURT:  They say at the beginning -- I'm

10:30:12 25  sorry to cut you off, as I'm looking at the page of the

10:30:16 1    chart that has the "if the quantity exceeds," and then over

10:30:20 2    to the side it says "Oracle Database can determine," and

10:30:24 3    then they quote the language of the claim.  For example,

10:30:28 4    "Oracle Database can display the selected database field."

10:30:33 5    And so what is this formatting query result, is that part of

10:30:38 6    the Oracle Database documentation?

10:30:44 7              MR. BOBROW:  No, this is SQL, so the querying,

10:30:49 8    the grouped by, which is on the next page, and then further

10:30:54 9    information about grouped by, those are essentially SQL

10:31:00 10   clauses or SQL commands, and that is essentially information

10:31:05 11   about what somebody else, whoever that somebody else is,

10:31:08 12   what they can try to do using a SQL program.  So that's not

10:31:12 13   something that's in the Oracle Database software, it's not

10:31:17 14   something that's in ATG, either, this is SQL, and someone

10:31:21 15   using SQL can who knows what they can do.  The program has

10:31:26 16   been around a long time and it has a lot of features and

10:31:30 17   functions, but that's not Oracle, that's not Oracle Database

10:31:34 18   or Oracle ATG.

10:31:36 19             THE COURT:  What is it they're citing at the

10:31:38 20   bottom, the source is Docs Oracle.com, X/DB and a bunch of

10:31:47 21   other stuff that I'm not going to read into the record.  Is

10:31:50 22   this not something that they got from Oracle about how the

10:31:54 23   Oracle Database works?

10:31:57 24             MR. BOBROW:  Right, it's not about the Oracle

10:32:00 25   Database, it's about SQL.  So you can go on to the web and

10:32:04 1    find lots of information about SQL.  For example, on page 12

10:32:08 2    they cite to a source called DBA.FYI Center, so there is

10:32:14 3    lots of information about how to structure SQL queries, how

10:32:19 4    SQL works, what kinds of things you can and can't do to try

10:32:23 5    to extract information from a database and it's all over the

10:32:29 6    web.  And I don't know as a matter of fact, but I assume

10:32:32 7    there are references to SQL on Oracle Database, on the net

10:32:38 8    app website, I mean, anybody that stores information,

10:32:42 9    because SQL is a third-party language that's agnostic as I

10:32:46 10   understand it to a particular database, it's a language.  So

10:32:49 11   there is information out there about the language.  But it's

10:32:53 12   not about the Oracle Database software and that's what's

10:32:57 13   accused here.  So what we don't have then is a pleading of

10:33:00 14   infringement of the method, that Oracle is practicing the

10:33:05 15   method.

10:33:05 16           THE COURT:  Because there is nothing that says

10:33:10 17   that the Oracle Database is involved -- does this step?

10:33:17 18           MR. BOBROW:  That's correct.

10:33:18 19           THE COURT:  It's if somebody wants to use SQL on

10:33:22 20   the Oracle Database, using the Oracle Database, I'm sorry,

10:33:27 21   computers are just not -- my vocabulary in this is probably

10:33:33 22   going to be horrifying to you, so I don't know what the word

10:33:35 23   is.  But is it the kind of thing where you can use the SQL

10:33:39 24   language on the database?

10:33:40 25           MR. BOBROW:  Yes.  For example, just image that

10:33:43 1  there is somebody, someone who has a laptop and wants to

10:33:47 2  query some sort of database and that person has SQL, that

10:33:51 3  person can try to formulate queries, structure queries and

10:33:55 4  otherwise try to interrogate the database in various ways to

10:34:01 5  get the information that he or she needs.  So there is a

10:34:03 6  whole programing language out there called SQL and

10:34:07 7  individuals, companies, whoever can use that language to try

10:34:10 8  to query databases.  The database itself has certain

10:34:15 9  operations and functions and the like, but that's the Oracle

10:34:21 10  Database.  How you query it and what you're doing when you

10:34:25 11  query it is something else, that's what this information

10:34:28 12  pertains to.

10:34:29 13          That we perceive is one of the fundamental

10:34:32 14  problems here is Oracle is accused of practicing the method,

10:34:36 15  so then there needs to be something that suggest plausibly

10:34:39 16  that it's Oracle that's practicing the method.  And yet the

10:34:43 17  information that is attached to the claim charts is about

10:34:46 18  what other people are doing or trying to do using SQL, not

10:34:51 19  using Oracle Database, but using SQL to interrogate a

10:34:56 20  database.  There is no evidence that anyone has interrogated

10:35:01 21  an Oracle Database -- I shouldn't say evidence, I should say

10:35:02 22  there is no pleading that anyone has done that, but

10:35:06 23  regardless, the point is there isn't information to suggest

10:35:09 24  that Oracle is practicing the method.

10:35:12 25          THE COURT:  Got it.  Okay.

10:35:13  1           MR. BOBROW:  It's similar but slightly different

10:35:17  2   for the '100 patent, because the issues around the '100

10:35:22  3   patent are not so much about SQL, but they're about

10:35:27  4   essentially another deficiency which is that for at least,

10:35:33  5   at least for Oracle Database, what the pleading tries to do

10:35:38  6   is stitch together different Oracle products without any

10:35:42  7   allegation or any facts pleaded that those different

10:35:46  8   products work together.  So the claim chart, which in this

10:35:52  9   particular -- for the '100 patent, this would be Exhibit E,

10:36:01 10   what that claim chart does --

10:36:03 11           THE COURT:  Give me a second to get there.

10:36:05 12           MR. BOBROW:  Sorry, Your Honor.

10:36:16 13           THE COURT:  Okay.

10:36:16 14           MR. BOBROW:  So what you have in Exhibit E is

10:36:19 15   essentially a recitation of claim 1.  This is the one about

10:36:24 16   creating a data report.  And what this claim in a nutshell

10:36:29 17   is about is you're querying some sort of a database using

10:36:35 18   some sort of search engine and something comes back called a

10:36:39 19   report, and in that report, there needs to be some sort of a

10:36:44 20   template, there is a template that comes back of the search

10:36:48 21   results, and those search results in that template include

10:36:52 22   links, links to the database.  That's just it in a nutshell.

10:36:56 23   And what element, I think we have been calling it Element C

10:37:00 24   is about --

10:37:07 25           THE COURT:  Is that the first one?

10:37:07 1            MR. BOBROW:  It's actually the next one down.

10:37:12 2  This would be on page 9 of Exhibit E.

10:37:16 3            THE COURT:  Is that accessing?

10:37:18 4            MR. BOBROW:  Correct.  And so what one of the

10:37:20 5  claim elements requires is that you access one or more

10:37:23 6  databases using a search engine per the defined query.  Now

10:37:29 7  what's cited here for Oracle Database is nothing about

10:37:34 8  Oracle Database.  What's cited here is a different Oracle

10:37:38 9  product and you can see here it's essentially an enterprise

10:37:44 10  search engine.  But there is no allegation that that

10:37:47 11  enterprise search engine is used with or is capable of being

10:37:52 12  used by or is used by Oracle Database.

10:37:55 13         So we have essentially Oracle has hundreds and

10:37:58 14  hundreds of products and there is an allegation here that,

10:38:01 15  you know, here is this enterprise search application and

10:38:06 16  there is no suggestion or pleaded facts to say that works

10:38:10 17  with and that's how you search using Oracle Database which

10:38:15 18  is the accused product.

10:38:16 19         And then on the last page, the second to last

10:38:20 20  page I should say, pages 12 and 13, this is the element that

10:38:27 21  talks about how you create a template of the search results,

10:38:30 22  the idea being that when you do this query search results

10:38:35 23  come back and there is a template of those search results,

10:38:38 24  and that template needs to include links back to,

10:38:41 25  essentially back to the database.

And here there is nothing in the material that recites that what's pulled back from Oracle Database includes any kind of links.  So Element C and Element E are problematic because there is nothing pleaded which plausibly suggest that Oracle Database, which is the accused product, does that, practices that method.

And then for ATG, the problems persist.  Once again they're a bit different, but the basic problem here is that what they have identified, ATG, has nothing to do with querying a database and bring bringing back search results --

THE COURT:  What is ATG?

MR. BOBROW:  ATG is a tool that's used to build web pages for E customers.  So you can image someone that wants to at the time set up their own store, for example, on eBay or on Amazon or what have you and they want to build a web page.  This allows you the build web pages, so for example, price information goes here, the color of the product goes here, the name of the product goes here.  So it's a tool that allows people to build web pages.

But that's not what the claim is about.  What the claim is about is using a search engine to query the database, the information comes back and there is a template of the results of the database query, including links that go back to the database.  That's not what ATG is.  There is

10:40:26 1   a template for building a web page, not for pulling results

10:40:30 2   or pulling information out of the database and creating a

10:40:33 3   template of the results of the search that you just did.

10:40:36 4   And there is nothing in the claim chart that suggest that.

10:40:40 5   Really this one is just apples to oranges, what they have

10:40:45 6   pleaded here and what they cite in exhibit, this would be

10:40:51 7   Exhibit F.

10:40:51 8                    THE COURT:  Okay.

10:40:53 9                    MR. BOBROW:  What they cite for that last

10:40:55 10  element, Element E, and this is on page 13 of Exhibit F, the

10:41:00 11  one about creating a template, what they cite to is

10:41:04 12  information about using what are called JSPs, a JSP.  And

10:41:13 13  what a JSP is all about, that stands for a server pages, a

10:41:23 14  server page, JSP, and that's essentially software for

10:41:29 15  developing web pages that can include what's called dynamic

10:41:33 16  content, oh, I want a blue sweater, now I want an orange

10:41:37 17  sweater, now I want a yellow sweater, and it can dynamically

10:41:44 18  change what's displayed.  But what the cite in the claim

10:41:45 19  chart is about a web page, it's not about a template or

10:41:48 20  essentially displaying in a template form results of a

10:41:51 21  database search.  So it's all about web pages and not about

10:41:57 22  a database.  So it's really an apples to oranges problem

10:42:01 23  here.  And there simply isn't anything that plausibly

10:42:05 24  suggest that Oracle AGT meets this limitation that calls for

10:42:10 25  the creating a template of the search results.  That's the

10:42:21 1    claim language.

10:42:21 2                    THE COURT:  Okay.

10:42:22 3                    MR. BOBROW:  We appreciate Your Honor's guidance

10:42:24 4    on this.  We think this case falls on the other side of that

10:42:28 5    line because all of this mixing and matching of products and

10:42:31 6    different products, and these are method claims, so there

10:42:34 7    needs to be something plausible to suggest that Oracle is

10:42:37 8    practicing this method or these methods I should say and

10:42:40 9    it's simply not in the pleading.

10:42:42 10                   THE COURT:  All right.  Thank you.

10:42:43 11                   MR. BOBROW:  Thank you, Your Honor.

10:42:49 12                   MR. RAMEY:  Bill Ramey again for the plaintiff,

10:42:54 13   Vilox Technologies.  Just to be clear, we believe we pled

10:42:58 14   fair notice of what we're accusing --

10:43:01 15                   THE COURT:  Why don't you respond to what we

10:43:03 16   just heard.

10:43:04 17                   MR. RAMEY:  Yes, Your Honor.  So what we've

10:43:06 18   shown, going back to the SQL reference is that there is

10:43:10 19   functionality within the Oracle Database product that allows

10:43:12 20   it to perform that step --

10:43:12 21                   THE COURT:  Let me get back to that.  Exhibit B,

10:43:30 22   right?

10:43:30 23                   MR. RAMEY:  Yes, Your Honor.

10:43:31 24                   THE COURT:  Okay.  Oracle Database and we are

10:43:35 25   looking at the element that begins "if," which is on page 12

10:43:45 1    of 15 of exhibit -- 12 of 15 of exhibit -- wait, I'm on

10:43:55 2    Exhibit C.  Okay.  It's on page 13 of 14 for Exhibit B.

10:44:06 3    Okay.  So what I understood that they were saying is look,

10:44:19 4    they're not talking about something that the Oracle Database

10:44:24 5    does, they're talking about something that hypothetically,

10:44:30 6    maybe somebody could do using something else that does this

10:44:34 7    step somehow using the Oracle Database, but that's not

10:44:40 8    something you can tag Oracle with, so what's your response

10:44:43 9    to that?

10:44:45 10            MR. RAMEY:  We were showing the capability is

10:44:47 11   there for Oracle to perform the method and we were using

10:44:50 12   what was publicly available, the SQL databases to show that

10:44:55 13   the functionality was within that element.

10:44:59 14            THE COURT:  Capability, it's like the capability

10:45:02 15   is there to use their database.  The database itself if

10:45:05 16   someone is not using SQL can't do this, right?

10:45:09 17            MR. RAMEY:  We would think that it does have

10:45:11 18   capability to do it without the product, we just use SQL --

10:45:14 19            THE COURT:  You haven't pleaded that, right?

10:45:17 20            MR. RAMEY:  That's correct, Your Honor, we use

10:45:19 21   that as an example.

10:45:20 22            THE COURT:  But why is that something that

10:45:23 23   Oracle is responsible for?

10:45:27 24            MR. RAMEY:  Oracle can do it itself, we don't

10:45:31 25   have --

10:45:31 1          THE COURT:  Have you pleaded that Oracle has

10:45:33 2    actually done it itself?

10:45:35 3          MR. RAMEY:  We thought through your direct

10:45:37 4    infringement claims we had.

10:45:38 5          THE COURT:  Where do you say that?

10:45:39 6          MR. RAMEY:  We don't explicitly say it, we use

10:45:42 7    this as the example to show that it's being performed.

10:45:47 8          THE COURT:  Yeah, but don't you have to say that

10:45:50 9    someone does it?  For a method claim, it has to be used, so

10:45:55 10   is there -- and for a direct infringement claim against

10:45:58 11   Oracle, you have to say Oracle uses it, right?  So do you

10:46:02 12   say that?

10:46:04 13         MR. RAMEY:  Yes, in general in the paragraph

10:46:05 14   where we introduce in the complaint --

10:46:08 15         THE COURT:  Point to me where you think you say

10:46:10 16   that.

10:46:11 17         MR. RAMEY:  Yes, Your Honor.  I don't have a

10:46:12 18   copy of that complaint with me right now.  FedEx, it didn't

10:46:16 19   arrive today, so my apologies for that.  That's the reason

10:46:19 20   we were trying to file with the Court this morning and we

10:46:24 21   brought A and L copies of documents.  But with that being

10:46:27 22   said, the pleading is invariably alleged, the first

10:46:30 23   paragraph is always direct infringements where we allege

10:46:32 24   that they make, use and sell directly infringe.

10:46:35 25         THE COURT:  Well, make, using and selling

10:46:37 1    doesn't really -- making and selling or offering to sell

10:46:40 2    doesn't really apply for a method claim, right?

10:46:44 3              MR. RAMEY:  They're using the method claim.

10:46:46 4              THE COURT:  Right.  But you just said we said

10:46:49 5    make, use, offer to sell.  Making, selling and offering to

10:46:53 6    sell doesn't apply to a method claim, right?

10:46:55 7              MR. RAMEY:  Just the using would, Your Honor.

10:46:57 8              THE COURT:  So if you're going to rely on -- it

10:46:59 9    seems like it's just kind of a generic statement rather than

10:47:03 10   something based on any belief that Oracle does this.  So I

10:47:11 11   guess what I'm saying, let's say you're saying as an example

10:47:15 12   Oracle uses SQL and does this, what is that based on?  What

10:47:22 13   is it based on?

10:47:23 14             MR. RAMEY:  We weren't trying to say Oracle is

10:47:27 15   limited to using SQL, we only have what's publically

10:47:31 16   available to do our complaint.  We were showing the

10:47:34 17   functionality is in the product to do that.  We were using

10:47:37 18   an example, so we use SQL to make that query into it.  We

10:47:41 19   anticipate when we do our infringement contentions, more

10:47:44 20   specificity will be begin and if not, as we do discovery

10:47:47 21   we'll learn how that functionality is practiced by Oracle,

10:47:51 22   but we know the functionality is there, so we think that the

10:47:54 23   pleadings --

10:47:55 24             THE COURT:  Is the functionality in the database

10:47:57 25   that allows this to be done or is the functionality in

10:48:01 1    something else?

10:48:01 2              MR. RAMEY:  We believe the functionality is in

10:48:03 3    the product, the Oracle Database product, Your Honor.

10:48:08 4              THE COURT:  Based on what?

10:48:10 5              MR. RAMEY:  Based on the pleadings of how we did

10:48:12 6    it and the chart that we attached as the exhibit.

10:48:30 7              THE COURT:  Okay.  And what about for the '100

10:48:38 8    patent?

10:48:39 9              MR. RAMEY:  For the other -- the data report, we

10:48:45 10   thought we showed that the products do work together, the

10:48:48 11   multiple products.  That if we did mention that, that the

10:48:52 12   report is being generated and that we have provided again

10:48:56 13   fair notice, it sounded more, and in both instances but more

10:49:01 14   so with regards to this one that Oracle's argument was a

10:49:04 15   non-infringement argument, that they don't practice that,

10:49:07 16   that they don't do that.  We're at the 12(b)(6) stage so

10:49:10 17   we're trying to put them on notice of what we allege are

10:49:14 18   infringing, that's what we know we think we have done in

10:49:17 19   this particular case with the allegations made and the

10:49:21 20   charts attached.

10:49:24 21             THE COURT:  Okay.  So your position is you're

10:49:30 22   showing that at least for the Oracle Database that it has

10:49:36 23   the functionality that would allow these things to be done

10:49:41 24   if, for example, SQL was used.

10:49:45 25             MR. RAMEY:  That would be one example, yes, Your

10:49:50 1   Honor.  More generally what we're saying is look, the Oracle

10:49:55 2   Database product does in fact have this functionality and it

10:49:59 3   is practiced, that's what we're --

10:50:01 4          THE COURT:  Do you actually say that, though?

10:50:03 5   Where do you say the Oracle Database has this functionality?

10:50:07 6          MR. RAMEY:  We attempted to say it in the chart.

10:50:09 7   If the Court believes we haven't sufficiently done that, we

10:50:13 8   ask leave to amend.

10:50:14 9          THE COURT:  It would be really helpful if you

10:50:17 10  had the complaint in front of you so that we could talk

10:50:19 11  about what -- just saying we think we said it but you can't

10:50:23 12  point me to it isn't all that helpful.

10:50:25 13         MR. RAMEY:  It's in the general language of the

10:50:27 14  pleadings, Your Honor, the charts are what we attach as the

10:50:30 15  evidence, what we use to show what their performed the

10:50:35 16  different elements of the claims.  Of course as the Federal

10:50:39 17  Circuit has said repeatedly, we don't have to prove our

10:50:43 18  infringement case at the pleading stage, so what we have

10:50:45 19  tried to do is to show what products we believe, how they

10:50:48 20  operate and the functionality that exist that infringes the

10:50:51 21  claims and we think we put them on fair notice of those

10:50:55 22  products and what functionality we say of the Oracle

10:51:00 23  Database infringes.  And if the Court doesn't see it, we

10:51:10 24  would ask the chance to amend.  We can take the Court's

10:51:12 25  guidance here, we can tighten those issues up.

10:51:16   1                    THE COURT:  All right.  Let me hear from

10:51:18   2   Mr. Bobrow.

10:51:21   3                    DR. DeBELLIS:  May I have a chance?

10:51:26   4                    MR. BOBROW:  Thank you, Your Honor.

10:51:28   5                    What we heard just now was essentially an

10:51:32   6   assertion that something in these documents, the attachments

10:51:36   7   and the complaint, there is something that shows that there

10:51:40   8   is this capability.  But a couple of responses.  Number one,

10:51:44   9   this is a method claim, not an apparatus claim, and so

10:51:49  10   capability or something that's designed or configured to be

10:51:52  11   able to do something is not apt here because these are

10:51:55  12   method claims.  So there needs to be a suggestion that

10:51:58  13   Oracle, Oracle Database or Oracle ATG are doing these

10:52:02  14   things.

10:52:03  15                    What the pleadings show at most, and I'm not

10:52:07  16   conceding that they show this, but what they show at most is

10:52:11  17   that there is somebody else, not Oracle, who is putting

10:52:15  18   together a query and trying to truncate the data, not

10:52:21  19   conceding that that's what's shown here, but let's take

10:52:25  20   every possible benefit of the doubt.  The claim requires

10:52:29  21   truncating, and it requires reducing characters in one or

10:52:36  22   more of the entries.  What the support for that is is SQL

10:52:38  23   commands, SQL queries.  So you could imagine somebody at

10:52:41  24   that their laptop putting together a SQL query using SQL,

10:52:47  25   using that program and truncating or trying to reduce the

number of characters by way of using SQL.  That's not Oracle
doing that and there is no suggestion that Oracle is doing
that.  That's somebody putting together a SQL query to try
to do that.  Now that SQL query is put together and sent to
a database, but still that --

          THE COURT:  What if they were to say, I don't
know, that Oracle -- like when you say someone is doing
that, what do you mean by someone?  Are we talking a person?
I don't know what --

          MR. BOBROW:  It could be a person, it could be
some application that someone is running that's trying to
query a database, whoever is trying to query a database,
whether that's a robotic, a computer robotic or a person,
someone could be trying to interrogate the database to get
information.  And it is that person or thing that is
composing the SQL interrogation, SQL query and structuring
it in various ways that the SQL program allows.

          So as Your Honor knows, these computers speak in
certain languages and SQL is a computer language, and it
allows certain functions, and some of those functions are
set forth in these claim charts.  But that's a SQL function.
And somebody is putting that function together and there is
no suggestion that it's Oracle that's doing that or that the
Oracle Database is interrogating itself, that the Oracle
Database is saying okay, I'm going to issue a command to

10:54:27  1    truncate this data.  What's here in the claim chart is SQL

10:54:32  2    is doing that, and someone is putting a SQL command together

10:54:37  3    and there is no pleading that Oracle is putting those

10:54:40  4    pleading commands together.

10:54:46  5            THE COURT:  Anything further you want to add,

10:54:49  6    Mr. Ramey, or Dr. DeBellis?

10:54:53  7            MR. RAMEY:  Your Honor, we're fine with what we

10:54:55  8    said.

10:55:00  9            DR. DeBELLIS:  My only comments would be that

10:55:08 10    what Mr. Bobrow suggested is accurate to the degree that we

10:55:12 11    spoke about a single claim in the chart in both of the

10:55:16 12    patents.  And, in fact, there is 30 something, I think there

10:55:20 13    is 36 in the first patent and 33 in the second patent,

10:55:23 14    claims, independent claims.  I did not have an opportunity

10:55:28 15    to review these papers prior to their submission, I was

10:55:33 16    overseas, not available at the time, and unfortunately the

10:55:38 17    headline that's sort of been buried is that in reality a lot

10:55:43 18    of the relationship between the Salesforce case in Texas and

10:55:48 19    the Oracle case are dependent on interactions at that

10:55:54 20    particular level that gave me the considerable belief that

10:56:01 21    there was not only written infringement by both, but willful

10:56:02 22    infringement.

10:56:02 23            And I can speak in a narrative form that in

10:56:02 24    2016, I had entered into an opportunity to speak with

10:56:11 25    Salesforce and in that conversation over a period of several

10:56:17 1    months speaking with the head of IP there, he let me know --

10:56:22 2    and by the way, I spent a considerable expense myself

10:56:26 3    detailing claim charts at that time against Salesforce

10:56:29 4    directly reading on their operations.  In difference to most

10:56:34 5    software and technology companies, they put all of their

10:56:38 6    operating manuals online, so all of their operations are

10:56:42 7    very readily available and we showed them in very conclusive

10:56:46 8    terms.

10:56:47 9            After calling me a troll, he basically told me

10:56:50 10   that it was impossible that they could infringe because they

10:56:54 11   use Oracle products.  And I have three of my own attorneys

10:56:58 12   who will present, who we will depose and happily testify to

10:57:02 13   the fact that in their presence, David Simons, head of

10:57:07 14   Intellectual Property, alleged that the Salesforce products

10:57:09 15   were based upon Oracle products which is ironic because when

10:57:13 16   I came up with these inventive concepts, Salesforce wasn't

10:57:16 17   even a company and their CEO and founder, Mr. Benioff, was a

10:57:21 18   salesman for Oracle.

10:57:23 19           You would add to that also that there was a

10:57:26 20   small company in Cambridge by the name of Optigrab that was

10:57:29 21   a supply chain fulfillment company that changed their name

10:57:35 22   to Endeca somewhere in the early 2000s.  They went on to

10:57:40 23   basically perform simultaneously almost identical both copy

10:57:45 24   on their websites as well as operations of their software

10:57:49 25   and they were, in fact, as Endeca acquired by Oracle in

10:57:52 1    2011.  And it would be my pleasure and opportunity to

10:57:56 2    hopefully in this Court to show that there is not only

10:58:00 3    infringement, but willful infringement of very, very

10:58:04 4    specific claims within those two patents.

10:58:06 5              THE COURT:  All I'm deciding here, sir, is

10:58:08 6    whether the pleading that has been submitted states a claim.

10:58:12 7    So I don't really find most of what you just said to be

10:58:17 8    germane to that.  Is there something that you want to tell

10:58:20 9    me about the pleading?

10:58:22 10              DR. DeBELLIS:  Only that it's incomplete in my

10:58:25 11   mind.

10:58:26 12              THE COURT:  All right.  Mr. Bobrow, if I were to

10:58:30 13   grant your motion, is there a reason I shouldn't grant it

10:58:33 14   with leave to amend?

10:58:34 15              MR. BOBROW:  No, Your Honor, we would not object

10:58:36 16   to leave to amend.  We do think that it will be difficult

10:58:40 17   for them to surmount that, but we would not oppose that,

10:58:45 18   just simply be dismissed with leave.

10:58:48 19              THE COURT:  All right.  I need to think about

10:58:50 20   that for a few minutes.  But before I do, this is the case

10:58:52 21   where the opinion from the Western District of Texas is

10:59:02 22   under seal, and the Third Circuit -- the Third Circuit is

10:59:12 23   pretty strict about filing things under seal.  So I asked

10:59:20 24   you guys about that, and I got a letter, but I didn't really

10:59:41 25   -- I mean, we're not sealing a court opinion.

10:59:45  1        MR. RAMEY:  Your Honor, I believe to the extent

10:59:47  2   it still remains sealed, we could get it unsealed.  The

10:59:51  3   Western District of Texas uses Vox, the Vox web product to

10:59:57  4   send things out and sometimes we've noted that documents get

11:00:00  5   sealed inadvertently.  I think we can get this one part of

11:00:05  6   it unsealed if not all, but I think parts of it were sealed

11:00:10  7   because parts of the NDA in it, a nondisclosure was

11:00:14  8   referenced, that's why they wanted it sealed.  I don't know

11:00:17  9   if we requested a redacted copy or not, but we can get that

11:00:20 10   for the Court if the Court wants that.

11:00:24 11        THE COURT:  All I can say is so I'm looking --

11:00:29 12   you guys did actually provide me with redactions, but I

11:00:38 13   mean, there are documents where huge portions of pages are

11:00:43 14   proposed to be redacted.  In order to meet the standard in

11:00:47 15   the Third Circuit, read the Avantia case.  I can't have a

11:00:52 16   declaration that says oh, this is confidential to us.  We

11:00:56 17   agree there was a nondisclosure.  The standard has to be met

11:01:00 18   that there is going to be a specific harm to you all from

11:01:06 19   specific things.  So it's not enough to say redact huge

11:01:11 20   portions of a brief because we think it's confidential.  So

11:01:15 21   I'm going to give you one more chance.  If you want this

11:01:18 22   stuff to be confidential, and perhaps all of this doesn't

11:01:21 23   need to be, but someone has got to go through on a

11:01:25 24   page-by-page or section-by-section basis and say this

11:01:28 25   information would work a specific harm to us if it were

11:01:35 1     disclosed.

11:01:36 2              Now, I'm paraphrasing, but I want you to go read

11:01:41 3     the case because that's what I'm ultimately going to do when

11:01:46 4     I have to make this determination.  I think I have to find

11:01:50 5     new words to say this because I keep asking people to make

11:01:53 6     the showing required and I just get a declaration saying oh,

11:01:56 7     well, we entered into a confidentiality agreement.  That's

11:01:59 8     not enough.  Okay?  Specific things for each thing, each

11:02:03 9     thing that you want me to allow a redaction for.  All right?

11:02:08 10             Okay.  So you guys can do that.  I need to take

11:02:11 11    a break for a little while, maybe thirty minutes so I can

11:02:15 12    think about what I want to do with this motion to dismiss.

11:02:18 13    Why don't you use this time, given that Dr. DeBellis said

11:02:23 14    that he would be willing to discuss his thoughts on

11:02:26 15    settlement, why don't you guys use this time to engage.

11:02:31 16             COURT CLERK:  All rise.

11:02:33 17             (A brief recess was taken.)

11:42:16 18             THE COURT:  All right.  Please be seated.  All

11:42:21 19    right.  So I am going to grant the motion to dismiss because

11:42:27 20    I don't think that it meets the standard required.  I don't

11:42:35 21    think it's sufficient to say it's capable, their products

11:42:41 22    are capable of performing the steps.  I think that we need

11:42:47 23    more.  So I am going to grant the motion.  I will give leave

11:42:51 24    to amend, which defendant does not object to.  And

11:42:55 25    plaintiff, you got to do your best job to plausibly allege

11:42:59  1      that these Oracle products actually infringe and perform the

11:43:05  2      various steps.

11:43:06  3              I'll give you thirty days to amend.  And when

11:43:16  4      you see that pleading, you can move to dismiss but don't

11:43:20  5      just do it as a matter of course, I would like you to give

11:43:23  6      some due consideration whether that's appropriate in light

11:43:26  7      of the amendment.

11:43:31  8              That's what I had.  With respect to I just asked

11:43:34  9      you guys to discuss things, and I know Oracle doesn't have a

11:43:38 10      representative here, so I guess this is a case, particularly

11:43:42 11      given that we have an individual involved, normally I would

11:43:46 12      send it -- tell you to go find a mediator at some point, but

11:43:50 13      is this a case where you think it would be at all useful for

11:43:54 14      me to ask a magistrate judge if a magistrate judge would

11:43:58 15      hear it?

11:43:59 16              MR. BOBROW:  Yes, Your Honor, I think that would

11:44:01 17      be useful.

11:44:02 18              THE COURT:  So I don't usually do that in patent

11:44:04 19      cases, but I will make an exception of this one and ask one

11:44:08 20      of our magistrate judges if they would be willing to

11:44:12 21      immediate.  Is that okay with plaintiff?

11:44:12 22              MR. RAMEY:  No objection from plaintiff, Your

11:44:14 23      Honor.

11:44:16 24              THE COURT:  All right.

11:44:22 25              DR. DeBELLIS:  No objection.

11:44:23  1          THE COURT:  All right.  So we will do that.  Is

11:44:24  2   there anything else we need to talk about while we're here?

11:44:27  3          MR. RAMEY:  Yes, Your Honor, if I may,

11:44:29  4   Dr. DeBellis leaves on the 16th for about two-and-a-half

11:44:32  5   weeks to fly back to the Ukrain.  Sometimes it's been

11:44:35  6   difficult for us to communicate with him.  That thirty days

11:44:38  7   falls right in there, can we extend it to forty-five?

11:44:41  8          THE COURT:  I don't have any objection to that.

11:44:43  9          MR. BOBROW:  No objection to that, Your Honor.

11:44:44 10          THE COURT:  Okay.  All right.

11:44:46 11          MR. BOBROW:  Your Honor, may I just address the

11:44:48 12   Court very briefly.  On the confidentiality of the papers,

11:44:51 13   we had a discussion with Dr. DeBellis as well as with

11:44:55 14   Mr. Ramey for Vilox and I think we have come up with a

11:44:58 15   solution that will allow us to unredact essentially all of

11:45:03 16   that material that has been redacted.  And we'll simply work

11:45:07 17   with them to figure out the best way to do that, unless the

11:45:10 18   Court has guidance on how to do that.

11:45:13 19          THE COURT:  No, that would be very helpful.  I

11:45:15 20   just think that we're trying to be more open.  I have had a

11:45:18 21   couple of instances where people complained because we let

11:45:21 22   redactions go, so I don't always notice it, but when the

11:45:25 23   order from the judge in Texas was sealed, it kind of caught

11:45:29 24   our attention.

11:45:30 25          MR. BOBROW:  Understood.  And so we will work

11:45:32  1    with the other side.  They have no objection to unredacting

11:45:36  2    the material and we don't either.  I think we will get this

11:45:39  3    done.  I apologize for all of that, Your Honor.

11:45:41  4              THE COURT:  I do appreciate that.  All right.

11:45:43  5    Anything else?

11:45:43  6              MR. RAMEY:  Nothing for plaintiff.

11:45:44  7              THE COURT:  Safe travels everyone.

11:45:47  8              COURT CLERK:  All rise.  The court is adjourned.

       9              (Court adjourned at 11:45 a.m.)

      10

      11              I hereby certify the foregoing is a true and
            accurate transcript from my stenographic notes in the proceeding.
      12

      13                        /s/ Dale C. Hawkins
                              Official Court Reporter
      14                       U.S. District Court

      15

      16

      17

      18

      19

      20

      21

      22

      23

      24

      25