IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORACLE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-126 (MN) |
| | ) | |
| VILOX TECHNOLOGIES, LLC and JOSEPH L. DE BELLIS, an individual, | ) | |
| | ) | |
| Defendants. | ) | |
| VILOX TECHNOLOGIES, LLC and JOSEPH L. DE BELLIS, an individual, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-302 (MN) |
| | ) | |
| ORACLE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ORACLE CORPORATION'S LETTER BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Dear Judge Noreika:

Dr. De Bellis's request for leave to file a proposed Second Amended Complaint (the "SAC") should be denied. Like his first two failed pleadings, the SAC does not plausibly allege that any Oracle product, or combination of Oracle products working together, practiced the steps of the asserted method claims of the '720 or '100 Patent before they expired in early 2020.

Dr. De Bellis's original complaint alleged only that a person of skill in the art would be *capable* of performing the claimed methods by writing SQL code that, when executed, would work with the accused products to perform certain claimed steps. *See, e.g.*, Ex. 1 (7.27.2024 Hrg. Tr.) at 29:10-13 ("MR. RAMEY: We were showing the capability is there for Oracle to perform the method . . . ."); *see also id.* at 34:5-38:11. The Court dismissed the complaint for not plausibly alleging that anyone actually practiced the claimed methods. *Id.* at 40:18-41:2. In his First Amended Complaint ("FAC"), Dr, De Bellis failed to remedy these deficiencies. Like the original complaint, the FAC did not allege that Oracle's products actually performed the claim limitations (e.g., the "on-the-fly" limitation). *See, e.g.*, Ex. 2 (9.9.2024 Hrg. Tr) at 33:8-38:15. The Court dismissed the FAC for that reason.

The proposed SAC fails to address these deficiencies. The SAC alleges only that a person of ordinary skill would be *capable* of performing the claimed methods. Dr. De Bellis argues that Oracle operates Oracle Cloud Infrastructure ("OCI"), but that misses the point. The SAC must plausibly allege that Oracle's operation of OCI somehow performed the steps of the claimed methods. It does not. Instead, it alleges that a person of skill would be *capable* of infringing by writing some hypothetical SQL code to perform steps of the methods. The only meaningful difference between the Original Complaint and the SAC is that Dr. De Bellis has now included "examples" of SQL code that would allegedly perform those steps. But De Bellis and Vilox's counsel admitted during the parties' meet-and-confer that these "examples" did not come from Oracle's products or literature. Rather, Dr. De Bellis and Vilox's counsel obtained the code by asking the generative AI tool called ChatGPT, long after the patents had expired, what infringing code might look like. *See* Ex. 3 (10.30.2024 W. Ramey Email). Dr. De Bellis further admitted during the meet-and-confer that the allegations in the SAC are nothing more than his "speculation" as to how Oracle's products may work. Dr. De Bellis's speculation—even when combined with hypothetical code from ChatGPT—is plainly insufficient to allege that Oracle performed the claimed methods.

The SAC also is deficient because it stitches together different Oracle products for different limitations of the asserted method claims without alleging that the products worked together to perform the claimed methods. Dr. De Bellis argues that this is sufficient because Oracle can provide those products on the same servers. But this argument misses the point. Dr. De Bellis must plausibly allege that Oracle used those products together in a way that would have performed each of the steps of the claimed methods. He has not even attempted to do so. Accordingly, leave to file the SAC should be denied.

**1. The Proposed Amendments For The '720 Patent Would Be Futile.**

The '720 Patent claims a method for presenting information from a database. For large categories of data (*e.g.*, every title in a large collection of books), this involves displaying a

truncated and representative list of the data that can help with navigation (e.g., a list of the letters A-Z representing the first letter of every book in the database that can be drilled down). Claim 1 requires "determining a quantity of entries in the selected database field" and, "if the quantity exceed[s] a specified amount, truncating data, and displaying the truncated data wherein the truncating reduces characters in one or more entries in the selected database field and the truncated data represents each of the entries in the selected database field." '720 Patent, Claim 1. The SAC does not plausibly allege that Oracle performed these steps.

The SAC includes mostly conclusory allegations that parrot the language of the claims. Dr. De Bellis supports his allegations with four exhibits that contain claim charts accusing certain Oracle products of infringement. Ex. 8.[1] Exhibits B and E to the SAC contain claim charts related to claim 1 of the '720 Patent (the only claim asserted from that patent).

**Exhibit B to the SAC** is a claim chart that accuses OCI and Oracle Database of infringing claim 1 of the '720 Patent. Like the original complaint, this claim chart identifies SQL commands that *could* (allegedly) be combined to write a program that performs the truncating step. *See* Ex. B at 14-21 (describing various functions in the SQL programming language). The Court has already ruled that such hypothetical allegations that Oracle is "capable" of performing the claimed methods are not sufficient. Ex. 1 (7.27.2024 Hrg Tr.) at 40:18-41:2. Regarding this claim, the only relevant difference between the original complaint and the SAC is that the SAC also provides an "example workflow" that would (allegedly) perform the truncating step when executed. *See* SAC, Ex. B at 24-25. But that "example" did not come from any Oracle product or Oracle document. To the contrary, Mr. Ramey admitted during the meet-and-confer that the examples came from "consulting from ChatGPT, to show that a person of ordinary skilled in the art can implement the limitations . . . ." Ex. 3 (10.30.2024 W. Ramey Email). Dr. De Bellis similarly confirmed during the meet-and-confer that this was just his "speculation" about how products could work. In other words, Dr. De Bellis appears to have asked ChatGPT what an infringing workflow might look like and pasted that into their claim charts. But that allegation is completely untethered from the operation of Oracle's products before the patents expired in 2020.

**Exhibit E to the SAC** is a claim chart that accuses Oracle ATG of infringing claim 1, but fails for similar reasons.[2] For the truncating step, the claim chart alleges that "Oracle ATG can include Oracle Endeca" and then inserts another hypothetical set of "code" that *could* purportedly be used to perform the steps of the claim. *See* SAC, Ex. E at 13-17. As noted above, however, this is just hypothetical code from the ChatGPT AI tool about how a person of ordinary skill could write code to perform the claimed method. The code is not from any Oracle product and does not plausibly allege that Oracle actually performed the claimed methods.

[1] The claim charts attached to Dr. De Bellis's letter brief are different from the charts he sent to Oracle on October 9, 2024 in response to the Court's order and should be ignored. Oracle has attached clean versions of the October 9 claim charts to this letter as Exhibit 8.

[2] Exhibit E contains two claim charts, the second of which is largely duplicative of Exhibit B. Mr. Ramey explained in connection with the parties' meet-and-confer that the second claim chart was a mistake and should be ignored. *See* Ex. 3 (10.30.2024 W. Ramey Email).

**2. The Proposed Amendments For The '100 Patent Would Be Futile.**

Claim 1 of the '100 Patent requires, among other things, executing a search on a database "on-the-fly," generating the search results with descriptors, and "creating a template of the search result, wherein the template comprises links to the data categories described by the descriptors." In other words, a user can run an on-the-fly search of a database and then use the search results to create a template for future searching.

The SAC does not plausibly allege that Oracle created a template from an on-the-fly search result. The SAC instead identifies a number of Oracle products that create "reports" or "templates," but fails to allege that they are templates of on-the-fly search results. Indeed, the documents that the SAC cites (and which are thus part of the pleading) demonstrate that the "templates" are created in ways not relevant to the asserted claims. Moreover, Dr. De Bellis admitted during a meet-and-confer that he was "speculating" as to how Oracle's products work. Exhibits D and F to the SAC contain Dr. De Bellis's claim charts related to claim 1 of the '100 Patent (the only claim asserted from that patent).

**Exhibit D to the SAC** is a claim chart that accuses OCI and Oracle Database of infringing claim 1 of the '100 Patent. When alleging that Oracle creates the claimed templates, Dr. De Bellis cites several products other than Oracle Database, including Universal Records Management (URM), Oracle Application Express (APEX), and Oracle Business Information Publisher (Oracle BI). These amendments fail because the SAC does not allege how those products would have been used in combination with Oracle Database to create a template from an on-the-fly database search or otherwise infringe claim 1. The SAC does not identify any customer who has purchased all of these products together, nor does it plausibly allege that Oracle or any customer has used those products together in any way that would infringe.

Oracle URM, for example, is a document management system. *See, e.g.*, Ex. 4. The documents cited in the SAC show that URM can be used to produce reports on individual documents ( "Internal Item Detail Report") and searched for documents ("Search Results Report.") Ex. 5. But nothing in those documents suggests that URM allows users to create "templates" from on-the-fly database searches. *See id.* Similarly, APEX is an application building platform that allows customers to build their own applications to interact with Oracle Database. Ex. 6. Although APEX can be used to design "templates" for these applications, nothing indicates that it allows users to run an on-the-fly database search and then create a template from those results. *Id.* Finally, the documents cited in Exhibit D show that Oracle BI is an analytics tool that allows users to edit "templates," but explains that those are "RTF Templates." Ex. 7. "RTF Templates" are "specification[s] used by common word processing applications, such as Microsoft Word," not templates created from on-the-fly search results. *Id.*

**Exhibit F to the SAC** similarly accuses Oracle ATG of infringing claim 1 of the '100 Patent. But Oracle ATG is a platform that allows users to create online storefronts to sell products. The documents attached to the SAC indicate that users can use Oracle ATG to create template *pages* for these storefronts, but those templates are clearly designed by the users. The SAC does not allege that the templates were created from an on-the-fly search of a database.

Accordingly, the Court should deny Dr. De Bellis's request for leave to file the SAC.

Respectfully,

*/s/ Brian P. Egan*

Brian P. Egan (#6227)

BPE/bac
Attachments

cc: Clerk of the Court (via hand delivery; w/attachments)
All Counsel of Record (via electronic mail; w/attachments)
Joseph L. De Bellis, M.D. (via electronic mail; w/attachments)