# EXHIBIT 1

09:37:18

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORACLE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 23-126(MN) |
| v. | ) | |
| | ) | |
| VILOX TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Thursday, July 27, 2023
10:00 a.m.
Hearing

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE MARYELLEN NOREIKA
United States District Court Judge

APPEARANCES:

MORRIS NICHOLS ARSHT & TUNNELL LLP
BY: JACK B. BLUMENFELD, ESQ.
BY: BRIAN P. EGAN, ESQ.

-and-

ORRICK HERRINGTON & SUTCLIFFE, LLP
BY: JARED BOBROW, ESQ.

Counsel for the Plaintiff

of 15 of exhibit -- 12 of 15 of exhibit -- wait, I'm on Exhibit C. Okay. It's on page 13 of 14 for Exhibit B. Okay. So what I understood that they were saying is look, they're not talking about something that the Oracle Database does, they're talking about something that hypothetically, maybe somebody could do using something else that does this step somehow using the Oracle Database, but that's not something you can tag Oracle with, so what's your response to that?

MR. RAMEY: We were showing the capability is there for Oracle to perform the method and we were using what was publicly available, the SQL databases to show that the functionality was within that element.

THE COURT: Capability, it's like the capability is there to use their database. The database itself if someone is not using SQL can't do this, right?

MR. RAMEY: We would think that it does have capability to do it without the product, we just use SQL --

THE COURT: You haven't pleaded that, right?

MR. RAMEY: That's correct, Your Honor, we use that as an example.

THE COURT: But why is that something that Oracle is responsible for?

MR. RAMEY: Oracle can do it itself, we don't have --

10:51:16 THE COURT: All right. Let me hear from Mr. Bobrow.

10:51:21 DR. DeBELLIS: May I have a chance?

10:51:26 MR. BOBROW: Thank you, Your Honor.

10:51:28 What we heard just now was essentially an assertion that something in these documents, the attachments and the complaint, there is something that shows that there is this capability. But a couple of responses. Number one, this is a method claim, not an apparatus claim, and so capability or something that's designed or configured to be able to do something is not apt here because these are method claims. So there needs to be a suggestion that Oracle, Oracle Database or Oracle ATG are doing these things.

10:52:03 What the pleadings show at most, and I'm not conceding that they show this, but what they show at most is that there is somebody else, not Oracle, who is putting together a query and trying to truncate the data, not conceding that that's what's shown here, but let's take every possible benefit of the doubt. The claim requires truncating, and it requires reducing characters in one or more of the entries. What the support for that is is SQL commands, SQL queries. So you could imagine somebody at that their laptop putting together a SQL query using SQL, using that program and truncating or trying to reduce the

number of characters by way of using SQL. That's not Oracle doing that and there is no suggestion that Oracle is doing that. That's somebody putting together a SQL query to try to do that. Now that SQL query is put together and sent to a database, but still that --

THE COURT: What if they were to say, I don't know, that Oracle -- like when you say someone is doing that, what do you mean by someone? Are we talking a person? I don't know what --

MR. BOBROW: It could be a person, it could be some application that someone is running that's trying to query a database, whoever is trying to query a database, whether that's a robotic, a computer robotic or a person, someone could be trying to interrogate the database to get information. And it is that person or thing that is composing the SQL interrogation, SQL query and structuring it in various ways that the SQL program allows.

So as Your Honor knows, these computers speak in certain languages and SQL is a computer language, and it allows certain functions, and some of those functions are set forth in these claim charts. But that's a SQL function. And somebody is putting that function together and there is no suggestion that it's Oracle that's doing that or that the Oracle Database is interrogating itself, that the Oracle Database is saying okay, I'm going to issue a command to

truncate this data. What's here in the claim chart is SQL is doing that, and someone is putting a SQL command together and there is no pleading that Oracle is putting those pleading commands together.

THE COURT: Anything further you want to add, Mr. Ramey, or Dr. DeBellis?

MR. RAMEY: Your Honor, we're fine with what we said.

DR. DeBELLIS: My only comments would be that what Mr. Bobrow suggested is accurate to the degree that we spoke about a single claim in the chart in both of the patents. And, in fact, there is 30 something, I think there is 36 in the first patent and 33 in the second patent, claims, independent claims. I did not have an opportunity to review these papers prior to their submission, I was overseas, not available at the time, and unfortunately the headline that's sort of been buried is that in reality a lot of the relationship between the Salesforce case in Texas and the Oracle case are dependent on interactions at that particular level that gave me the considerable belief that there was not only written infringement by both, but willful infringement.

And I can speak in a narrative form that in 2016, I had entered into an opportunity to speak with Salesforce and in that conversation over a period of several

months speaking with the head of IP there, he let me know -- and by the way, I spent a considerable expense myself detailing claim charts at that time against Salesforce directly reading on their operations. In difference to most software and technology companies, they put all of their operating manuals online, so all of their operations are very readily available and we showed them in very conclusive terms.

After calling me a troll, he basically told me that it was impossible that they could infringe because they use Oracle products. And I have three of my own attorneys who will present, who we will depose and happily testify to the fact that in their presence, David Simons, head of Intellectual Property, alleged that the Salesforce products were based upon Oracle products which is ironic because when I came up with these inventive concepts, Salesforce wasn't even a company and their CEO and founder, Mr. Benioff, was a salesman for Oracle.

You would add to that also that there was a small company in Cambridge by the name of Optigrab that was a supply chain fulfillment company that changed their name to Endeca somewhere in the early 2000s. They went on to basically perform simultaneously almost identical both copy on their websites as well as operations of their software and they were, in fact, as Endeca acquired by Oracle in

2011. And it would be my pleasure and opportunity to hopefully in this Court to show that there is not only infringement, but willful infringement of very, very specific claims within those two patents.

THE COURT: All I'm deciding here, sir, is whether the pleading that has been submitted states a claim. So I don't really find most of what you just said to be germane to that. Is there something that you want to tell me about the pleading?

DR. DeBELLIS: Only that it's incomplete in my mind.

THE COURT: All right. Mr. Bobrow, if I were to grant your motion, is there a reason I shouldn't grant it with leave to amend?

MR. BOBROW: No, Your Honor, we would not object to leave to amend. We do think that it will be difficult for them to surmount that, but we would not oppose that, just simply be dismissed with leave.

THE COURT: All right. I need to think about that for a few minutes. But before I do, this is the case where the opinion from the Western District of Texas is under seal, and the Third Circuit -- the Third Circuit is pretty strict about filing things under seal. So I asked you guys about that, and I got a letter, but I didn't really -- I mean, we're not sealing a court opinion.

10:59:45 MR. RAMEY: Your Honor, I believe to the extent it still remains sealed, we could get it unsealed. The Western District of Texas uses Vox, the Vox web product to send things out and sometimes we've noted that documents get sealed inadvertently. I think we can get this one part of it unsealed if not all, but I think parts of it were sealed because parts of the NDA in it, a nondisclosure was referenced, that's why they wanted it sealed. I don't know if we requested a redacted copy or not, but we can get that for the Court if the Court wants that.

11:00:24 THE COURT: All I can say is so I'm looking -- you guys did actually provide me with redactions, but I mean, there are documents where huge portions of pages are proposed to be redacted. In order to meet the standard in the Third Circuit, read the Avantia case. I can't have a declaration that says oh, this is confidential to us. We agree there was a nondisclosure. The standard has to be met that there is going to be a specific harm to you all from specific things. So it's not enough to say redact huge portions of a brief because we think it's confidential. So I'm going to give you one more chance. If you want this stuff to be confidential, and perhaps all of this doesn't need to be, but someone has got to go through on a page-by-page or section-by-section basis and say this information would work a specific harm to us if it were

**disclosed.**

**Now, I'm paraphrasing, but I want you to go read the case because that's what I'm ultimately going to do when I have to make this determination. I think I have to find new words to say this because I keep asking people to make the showing required and I just get a declaration saying oh, well, we entered into a confidentiality agreement. That's not enough. Okay? Specific things for each thing, each thing that you want me to allow a redaction for. All right?**

**Okay. So you guys can do that. I need to take a break for a little while, maybe thirty minutes so I can think about what I want to do with this motion to dismiss. Why don't you use this time, given that Dr. DeBellis said that he would be willing to discuss his thoughts on settlement, why don't you guys use this time to engage.**

**COURT CLERK: All rise.**

**(A brief recess was taken.)**

**THE COURT: All right. Please be seated. All right. So I am going to grant the motion to dismiss because I don't think that it meets the standard required. I don't think it's sufficient to say it's capable, their products are capable of performing the steps. I think that we need more. So I am going to grant the motion. I will give leave to amend, which defendant does not object to. And plaintiff, you got to do your best job to plausibly allege**

that these Oracle products actually infringe and perform the various steps.

I'll give you thirty days to amend. And when you see that pleading, you can move to dismiss but don't just do it as a matter of course, I would like you to give some due consideration whether that's appropriate in light of the amendment.

That's what I had. With respect to I just asked you guys to discuss things, and I know Oracle doesn't have a representative here, so I guess this is a case, particularly given that we have an individual involved, normally I would send it -- tell you to go find a mediator at some point, but is this a case where you think it would be at all useful for me to ask a magistrate judge if a magistrate judge would hear it?

MR. BOBROW: Yes, Your Honor, I think that would be useful.

THE COURT: So I don't usually do that in patent cases, but I will make an exception of this one and ask one of our magistrate judges if they would be willing to immediate. Is that okay with plaintiff?

MR. RAMEY: No objection from plaintiff, Your Honor.

THE COURT: All right.

DR. DeBELLIS: No objection.